UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KYLE MURRAY,<br><br>        Plaintiff,<br><br>  -against-<br><br>CITY OF NEW YORK, GEORGE BROWN, Individually, MARKO SIKIRIC, Individually, FRANCIS CAHILL, Individually, and KEVIN THOMAS, Individually,<br><br>        Defendants. | No. 18-CV-4563 (AMD)(RML)<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiff KYLE MURRAY, by his attorney, the Bromberg Law Office, P.C., complaining of the defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees under 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, which are secured by these statutes and the United States Constitution.

### JURISDICTION

2. Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3. This Court has jurisdiction to hear all claims in this matter under 28 U.S.C. §§ 1331 and 1343.

## VENUE

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PARTIES

6. Plaintiff KYLE MURRAY is a United States Citizen who resided in Staten Island, New York, at all times hereinafter mentioned.

7. Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

9. At all times hereinafter mentioned, the individually named defendant, Sergeant GEORGE BROWN (Shield No. unknown), was a duly sworn police officer, sergeant, and supervisor of the NYPD, attached to the NYPD's 425 Command, and was acting under the supervision of the NYPD, according to his official duties; and, as an NYPD sergeant, he was the ranking officer with supervisory responsibilities, and an NYPD policy maker with respect to the matters complained of herein.

10. At all times hereinafter mentioned, the individually named defendant, P.O. MARKO SIKIRIC (Shield No. 26207 and Tax No. 946251), was a duly sworn police officer of the NYPD, attached to the 425 Command, and was acting under the supervision of the NYPD and Defendant GEORGE BROWN, and according to his official duties.

11. At all times hereinafter mentioned, the individually named defendant, FRANCIS CAHILL, was a duly sworn police officer of the NYPD, attached to the 472 Command, and was acting under the supervision of the NYPD and Defendant GEORGE BROWN, and according to his official duties.

12. At all times hereinafter mentioned, the individually named defendant, P.O. KEVIN THOMAS (Shield No. 24437), was a duly sworn police officer of the NYPD, attached to the 425 Command, and was acting under the supervision of the NYPD and Defendant GEORGE BROWN, and according to his official duties.

13. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the CITY OF NEW YORK.

14. Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## FACTS

15. On Saturday, August 15, 2015, at approximately 5:10 a.m., Plaintiff

KYLE MURRAY ("Mr. Murray") was in Brooklyn, New York and stepped into his car to drive home to Staten Island.

16. At the time, Mr. Murray was a 27-year-old college graduate.

17. His car was parked at the corner of East 23rd Street and Shore Parkway.

18. Since he was parked at the corner, Mr. Murray signaled right and turned the corner.

19. He was pulled over by the defendants, who falsely claimed that he had not signaled before turning the corner.

20. Mr. Murray had not violated any law and that there was, therefore, no basis to stop him.

21. It was the early morning on a Saturday and Mr. Murray is a young black male.

22. Because there was no basis for the traffic stop and he was being racially profiled, Mr. Murray began recording the interaction with the defendants on his cell phone.

23. At some point, one of the defendants became angry at Mr. Murray for asking why he had been pulled over.

24. After repeatedly and falsely accusing Mr. Murray of being "out of control" and after falsely accusing Mr. Murray of having drugs in his glove compartment, the defendant with whom Mr. Murray was speaking pulled Mr. Murray roughly out of his car.

25. The defendant then handcuffed Mr. Murray behind his back.

26. Another defendant then became enraged and sprayed mace into Mr. Murray's face while his hands were handcuffed behind his back.

27. Defendants then brought Mr. Murray to Coney Island Hospital for treatment.

28. Mr. Murray was handcuffed to a gurney while the doctors treated him for the mace.

29. At or about the same time, Defendants manufactured a claim that Mr. Murray had been driving while intoxicated and arrested him for that false claim.

30. Mr. Murray's was not driving while intoxicated or impaired or in any way other than lawfully and reasonably.

31. At all times, Mr. Murray was acting lawfully and reasonably and was not obstructing governmental administration or resisting arrest.

32. Defendants then swore out a false criminal complaint against Mr. Murray, claiming that he had been operating a motor vehicle while under the influence of alcohol or drugs, obstructing governmental administration, resisting arrest, and failing to use his turn signal.

33. After more than two-and-a-half years of court appearances and emotional distress and after a lengthy "*Huntley/Ingle/Dunaway/*Refusal" Hearing held on January 18, 2018, the City moved to dismiss the case and the dismissal was granted, with the case being dismissed on May 16, 2018.

34. During the evidentiary "*Huntley/Ingle/Dunaway/*Refusal" Hearing,

P.O. Sikiric gave false testimony to the Court.

35.     As a result of the defendants' false arrest and attacks, Mr. Murray suffered the physical, emotional and psychological pain and humiliation of being handcuffed and maced and publicly handcuffed to a gurney in a public hospital, not to mention the more than two-and-a-half-year ordeal of numerous court appearances and an evidentiary hearing before the dismissal.

36.     Mr. Murray had to make numerous court appearances in connection with the criminal case before the case was dismissed.

37.     Mr. Murray had to take off time from work for these court appearances and he also had to take off time to meet with his attorney and prepare for trial.

38.     As a result, Mr. Murray lost wages for having to miss work.

39.     Defendants manufactured the underlying false allegations and forwarded this information to the District Attorney's Office knowing that it would be used against Mr. Murray at trial.

40.     Defendants falsely claimed, among other false allegations, that Mr. Murray had been operating a motor vehicle while under the influence of alcohol or drugs, obstructing governmental administration, resisting arrest, and failing to use his turn signal.

41.     On the night of Sunday, August 16, 2015, Mr. Murray was arraigned on the false charges set forth above.

42.     Upon arraignment, the presiding Criminal Court judge released Mr. Murray on his own recognizance.

43. Prior to Mr. Murray's release at arraignment, he spent approximately 20 hours falsely imprisoned.

44. The defendants arrested and initiated criminal proceedings and testified against Mr. Murray despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

45. The defendants initiated this prosecution for the purpose of covering up their unlawful and unjustified assault upon Mr. Murray.

46. This false arrest and denial of Mr. Murray's fair trial rights compelled him to return to the Kings County Criminal Court to face these false charges on numerous occasions.

47. All of the events leading up to and culminating in Mr. Murray being subjected to excessive force, false arrest, and denial of fair trial rights occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

48. All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and supervising of its employees.

49. The underlying application of excessive force, false arrest, and denial of the right to a fair trial is not an isolated incident. Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints

filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances confronting them in the course of citizen-police encounters and what constitutes probable cause for an arrest.

50. Further, these officers routinely apply excessive force in the course of these encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct; and, upon applying such force, these officers engage in falsification, including, but not limited to, charging victimized citizens with Assault in the Second Degree. *See, e.g., Graham v. City of New York*, 928 F. Supp. 2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); *Rodriquez v. City of New York*, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); *Tucker v. City of New York*, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (same); *Williams v. City of New York*, 06-CV-6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); *Stroe v. City of New York*, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same). *See also* Ashley Southall & Marc Santora, *Remembering a Man Whose Death Made Him a Symbol of a Divide: Mourners Demand Justice for Staten Island Man in Chokehold Case*, N.Y. TIMES, July 23, 2014, http://www.nytimes.com/2014/07/24/nyregion/mans-dying-words-in-police-custody-

become-rallying-cry-before-his-funeral.html?_r=0 ("'I can't breathe,' Eric Garner had said over and over again last Thursday after he was apparently placed in a chokehold by the police and wrestled to the ground, accused of illegally peddling cigarettes. . . . The [NYPD] has banned the use of chokeholds since 1993. In 1994, a Bronx man was killed by an officer using the grip. Despite the ban, complaints of officers' using chokeholds have steadily come before the Civilian Complaint Review Board. From 2009 to 2013, the board received 1,022 such complaints."); Rocco Parascandola & Thomas Tracy, *NYPD puts Brooklyn cop on desk duty for reportedly stomping on suspect who lay on ground*, N.Y. DAILY NEWS, July 26, 2014, http://www.nydailynews.com/new-york/brooklyn/brooklyn-desk-duty-reportedly-stomping

-man-article-1.1880818; ("A Brooklyn cop was put on modified assignment Friday after allegedly stomping on a suspect's head, authorities said. NYPD Officer Joel Edouard, 36, had subdued Jahmil-El Cuffee on suspicion of marijuana possession on Malcolm X Blvd. in Bedford-Stuyvesant at 8 p.m. Wednesday – and then he booted the man as he lay on the ground, officials said."); Robert Gearty, *Bronx man suing NYPD for excessive force for a rough arrest captured on cell phone video*, N.Y. DAILY NEWS, Sep. 10, 2012, http://www.nydailynews.com/new-york/bronx/bronx-man-suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-article-1.1156308 (A Bronx man sued the City of New York and the individual NYPD officers for excessive force: "The video lasts about one minute and appears to show then 19-year-old Luis Solivan being pummeled in the face several times by one

officer as the other cop pinned him down. . . . [T]he two officers chased Solivan into his home for no reason, pepper-sprayed him and beat him with their hands and a walkie-talkie. Solivan's mother and two younger brothers were in the University Avenue apartment at the time. After Solivan was hand-cuffed, he was kicked and his head was thrust into a wall so hard the impact left a hole . . . ."); Daniel Beekman, *Man wins $2.5 million in lawsuit against NYPD cops over using excessive force*, N.Y. DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-wins-2-5m-suit-nypd-article-1.1552534 (The plaintiff sued the City of New York and the individual NYPD officers and the jury awarded him $2,500.000.00 in damages at trial because an NYPD officer "threw him down and kicked him in the knee," causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, *Lawyer for drug suspect who was beaten by cops demands special prosecutor*, N.Y. DAILY NEWS, Feb. 6, 2012, http://www.nydailynews.comnews/crime/lawyer-drug-suspect-beaten-cops-demands-special-prosecutor article1.1018037#ixzz2vs7snZ6M (describing the case of Jateik Reed, who was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video). See also NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "Bi-Annual Report, January - June 2013 Report," http://www.nyc.gov/html/ccrb/downloads/pdfCCRBsemi2013_jan_June.pdf ("In the first half of 2013, excessive use of force was alleged in 55% of complaints compared to 49% in 2012 . . . ."); NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "2012 Annual Report," http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf

10

("In 2012, 50% of all complaint contained one or more force allegations, compared to 48% in 2011.").

51. Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in deprivations of civil rights. Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the defendants to violate Mr. Murray's civil rights.

52. Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware that, prior to this incident, the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, Defendant CITY of NEW YORK has retained these officers and failed to adequately train, supervise, and discipline them.

53. As a result of the foregoing, Plaintiff KYLE MURRAY, has sustained, among other damages, physical injuries, substantial pain, mental injuries, emotional distress, embarrassment, and deprivation of his constitutional rights and liberty.

54. As a result of the foregoing, Defendant CITY OF NEW YORK is liable for the individual Defendants' acts under to the doctrine of *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

55.     Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

56.     All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

57.     All of these aforementioned acts deprived Plaintiff KYLE MURRAY of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

58.     The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

59.     The individual defendants carried out these illegal acts in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

60.     The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

61.     As a result, Plaintiff KYLE MURRAY is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus

reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

62. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

63. The defendants arrested Plaintiff KYLE MURRAY without probable cause or legal privilege, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

64. The defendants caused Plaintiff KYLE MURRAY to be falsely arrested and unlawfully imprisoned, resulting in Plaintiff being put in fear for his safety, humiliated, embarrassed, and deprived of his liberty.

65. As a result, Plaintiff KYLE MURRAY is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
(Excessive Force under 42 U.S.C. § 1983)

66. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

67. The defendants employed force against Plaintiff KYLE MURRAY that was excessive, objectively unreasonable, and in a clear violation of Plaintiff's constitutional rights.

13

68. At no time did Plaintiff KYLE MURRAY pose a threat to the safety of the defendants or anyone else, nor resist or attempt to evade arrest in anyway whatsoever.

69. As a result of the defendants' conduct, Plaintiff KYLE MURRAY was subjected to excessive force and sustained physical injuries, including, but not limited to, making and the imposition of substantial pain; persistent discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

70. As a result, Plaintiff KYLE MURRAY is entitled to compensatory damages in amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Denial of the Right to Fair Trial under 42 U.S.C. § 1983)

71. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

72. The defendants falsified the information against Plaintiff KYLE MURRAY likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecution of Plaintiff.

73. The defendants caused Plaintiff KYLE MURRAY to be prosecuted upon the false information that they submitted to the District Attorney's Office until the underlying prosecution was adjourned in contemplation of dismissal on

January 21, 2014.

74. As a result, Plaintiff KYLE MURRAY is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

75. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

76. The defendants had an affirmative duty to intervene on behalf of Plaintiff KYLE MURRAY, whose constitutional rights were being violated in their presence by other officers, including the individual defendants.

77. The defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

78. As a result of the defendants' conduct, Plaintiff KYLE MURRAY was subjected to excessive force; false arrest; denial of his right to a fair trial; his liberty was restricted for an extended period of time; he was put in fear for his safety; he was physically brutalized and in pain; and he was subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

79. As a result, Plaintiff KYLE MURRAY is entitled to compensatory damages in amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus

reasonable attorneys' fees, costs, and disbursements of this action.

80. All of the foregoing acts of the defendants deprived Plaintiff KYLE MURRAY of federally protected rights, including, but not limited to, the right:

    A. To be free from deprivation of civil rights and liberty;

    B. To be free from false arrest/unlawful imprisonment;

    C. To be from excessive force;

    D. To be free from denial of the right to a fair trial; and

    E. To be free from the failure to intervene.

81. As a result, Plaintiff KYLE MURRAY is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Malicious Prosecution under 42 U.S.C. § 1983)

82. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

83. The defendants initiated, commenced, and continued a malicious prosecution against Plaintiff KYLE MURRAY.

84. The defendants misrepresented and falsified the information that they presented to the District Attorney's Office in order to prosecute Plaintiff.

16

85. The defendants did not make a complete and full statement of facts to the District Attorney's Office in the underlying prosecution.

86. The defendants caused Plaintiff KYLE MURRAY to be prosecuted without any probable cause until all of the charges against him were dismissed outright on May 16, 2018, resulting in a favorable termination for Plaintiff.

87. As a result, Plaintiff KYLE MURRAY is entitled to compensatory damages in amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff KYLE MURRAY demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) full and fair compensatory damages in an amount to be determined by a jury;

(B) punitive damages against the individual defendants in an amount to be determined by a jury;

(C) reasonable attorneys' fees and the costs and disbursements of this action; and

 (D)  such other and further relief as the Court deems just and proper.

**Dated:**  New York, New York
     March 8, 2019

                Respectfully submitted,

                BROMBERG LAW OFFICE, P.C.
                26 Broadway, 21st Floor
                New York, New York 10004
                Tel: (212) 248-7906
                Fax: (212) 248-7908
                Email: brian@bromberglawoffice.com

                By:  /s/ Brian L. Bromberg
                    Brian L. Bromberg

             Attorney for Plaintiff KYLE MURRAY

## Certificate of Service

I, Brian L. Bromberg, an attorney, hereby certify that on March 8, 2019, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Kaitlin E. Fitzgibbon, Esq.   kfitzgib@law.nyc.gov

Dated: March 8, 2019

/s/ Brian L. Bromberg
Brian L. Bromberg

Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004